UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| A.M., A MINOR, BY HER PARENT AND NEXT FRIEND, OPRAH COOPER, JR., F/K/A ODA HAKORIMANA | Plaintiff |
| v. | Civil Action No. 3:17-cv-00539-RGJ |
| VIRGINIA COUNCIL OF CHURCHES, INC., ET AL. | Defendants |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff A.M., by her parent and next friend, Oprah Cooper, Jr., f/k/a Oda Hakorimana ("Cooper"), brings this action against the Virginia Council of Churches, Inc. ("VCC") and Church World Service, Inc. ("CWS") seeking relief for alleged constitutional violations under 42 U.S.C. § 1983 and various state law tort claims. [DE 17, Amend. Compl.]. She brings related state law tort claims against Allstate Insurance Company. *Id.* Defendants now move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). [DE 20, Def. CWS's Mot. Dismiss; DE 21, Def. Allstate's Mot. Dismiss; DE 23, Def. VCC's Mot. Dismiss]. CWS and Allstate also move to dismiss for improper venue under Rule 12(b)(3) and on statute-of-limitations grounds. [DE 20, Def. CWS's Mot. Dismiss; DE 21, Def. Allstate's Mot. Dismiss]. These motions are ripe for adjudication. Having reviewed the parties' filings and the applicable law, the Court finds that it lacks personal jurisdiction over Defendants and **GRANTS** Defendants' Motions to Dismiss.[1]

---

[1] Because the Court lacks personal jurisdiction, it need not consider CWS's and Allstate's venue and statute-of-limitations defenses.

1

## BACKGROUND

CWS receives funding from the United States to operate the Church World Service Immigration and Refugee Program, which prepares case files for refugees in sub-Saharan Africa being considered for resettlement in the United States. [DE 17, Amend. Compl. at ¶¶ 2, 6]. VCC is a local resettlement affiliate of CWS and has cooperative agreements with the United States Department of State. *Id.* at ¶ 1.

A.M. and Cooper are refugees from Tanzania who, with CWS's and VCC's assistance, resettled in the United States. *Id.* at ¶ 5. In 2007, a VCC employee referred Cooper to a licensed daycare provider in Hagerstown, Maryland. *Id.* at ¶ 11. Cooper alleges that the VCC employee failed to investigate whether the daycare complied with Maryland laws and regulations before recommending the site. *Id.* at ¶¶ 13-15. A.M., then five-months old, suffered a mentally disabling event at the daycare on October 25, 2007. *Id.* at ¶¶ 11, 21-22. Cooper does not describe the event but claims that A.M. suffered injuries to her neck, skull, brain, face, and eyes, and was diagnosed with "shaken baby syndrome." *Id.* at ¶¶ 21-22.

In 2010, Cooper filed a tort action on behalf of herself and A.M. in Maryland state court against the daycare provider and the provider's then-boyfriend. [DE 20-2, Amend. Compl.]. The Maryland court dismissed the suit on November 18, 2011 because the parties failed to attend a scheduled pretrial conference. [DE 20-3, Order]. Cooper now brings this action against CWS and VCC for alleged constitutional violations under 42 U.S.C. § 1983 and state law tort claims. [DE 17, Amend. Compl.]. Cooper also brings tort claims against Allstate for failing to adequately insure the daycare provider. *Id.* at ¶¶ 34-58. Defendants move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). [DE 20, Def. CWS's Mot. Dismiss; DE 21, Def. Allstate's Mot. Dismiss; DE 23, Def. VCC's Mot. Dismiss]. CWS and Allstate also move to dismiss for improper

venue under Rule 12(b)(3) and on statute-of-limitations grounds. [DE 20, Def. CWS's Mot. Dismiss; DE 21, Def. Allstate's Mot. Dismiss].

## LEGAL STANDARD

Presented with a motion to dismiss under Rule 12(b)(2), the Court may (1) rule on the motion based on the affidavits alone, (2) permit discovery on the motion, or (3) hold an evidentiary hearing on the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citing *Serras v. First Tenn. Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). No party has requested an evidentiary hearing or indicated a need for discovery on the personal jurisdiction issue, so the Court will rule based on the pleadings alone.

Once a defendant challenges personal jurisdiction, the burden is on the plaintiff to show that jurisdiction is proper. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). To do so, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts" showing the Court's jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When, as here, the Court "resolves a Rule 12(b)(2) motion solely on written submissions, the plaintiff's burden is relatively slight, and the plaintiff must make only a *prima facie* showing personal jurisdiction exists in order to defeat dismissal." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Theunissen*, 935 F.2d at 1458; *AM. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)) (internal quotation omitted). The plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (internal quotation marks omitted).

In resolving a motion to dismiss under Rule 12(b)(2), the Court must view the pleadings and affidavits in a light most favorable to the plaintiff and should not "weigh the controverting assertions of the party seeking dismissal." *Air Prods.*, 503 F.3d at 549 (citing *Theunissen*, 935 F.2d at 1459) (internal quotation omitted).

**DISCUSSION**

The Federal Rules of Civil Procedure permit district courts to exercise personal jurisdiction over a defendant who, among other things, "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." FED. R. CIV. P. 4(k)(1)(A). A court's exercise of personal jurisdiction over an out-of-state defendant must be consistent with both the forum state's long-arm statute and principles of federal due process. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citation omitted). In Kentucky, the Commonwealth's long-arm statute demands more than a constitutional inquiry. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). As a result, Kentucky courts must first look to the Commonwealth's long-arm statute to determine whether they can exercise personal jurisdiction over a non-resident defendant. Only then should they consider federal due process requirements.[2]

Kentucky's long-arm statute requires that an action "arise from" conduct or activity that fits within at least one of nine enumerated categories. KY. REV. STAT. ANN. § 454.210(2)(a). The enumerated categories are:

1. Transacting any business in the Commonwealth;

2. Contracting to supply services or goods in the Commonwealth;

3. Causing tortious injury by an act or omission in the Commonwealth;

---

[2] The Court need not reach the question of federal due process in this case because the alleged conduct does not arise from conduct related to the long-arm statute's nine enumerated categories. *See Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012) (reaching the question of whether exercise of personal jurisdiction comported with federal due process requirements only after agreeing that Kentucky's long-arm statute for personal jurisdiction had been satisfied).

4

4. Causing tortious injury in the Commonwealth by an act or omission outside the Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the Commonwealth, provided that the tortious injury occurring in the Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in the Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside the Commonwealth;

6. Having an interest in, using, or possessing real property in the Commonwealth, providing the claim arises from the interest in, use of, or possession of real property;

7. Contracting to insure any person, property, or risk located within the Commonwealth at the time of contracting;

8. Committing sexual intercourse in the Commonwealth where the intercourse causes the birth of a child; or

9. Making a telephone solicitation into the Commonwealth.

*Newberry*, 789 F.3d at 641-42 (citing KY. REV. STAT. ANN. § 454.210)).

To ensure that a claim "arises from" a defendant's conduct or activity, courts have required "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." *Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 629 (6th Cir. 2016) (citing *Caesars*, 336 S.W.3d at 57); *see also Newberry v. Silverman*, 789 F.3d 636, 641-42 (6th Cir. 2015); *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011); *Cooper v. Nair*, 2015 WL 128549 at *3 (Ky. Ct. App. Jan. 9, 2015). This "critical limitation on the statute's operation" ensures that the Court cannot exercise personal jurisdiction over a non-resident merely because he has engaged in conduct that fits within the enumerated categories. *Caesars*, 336 S.W.3d at 55. Instead, "[t]he plaintiff must also show that [her] claim is one that *arises from* the conduct or activities described in the subsection." *Id.* (emphasis added).

### A. WCS and VCC

Cooper contends that WCS's and VCC's activities fall "squarely within Kentucky's Long-Arm Statute establishing personal jurisdiction." [DE 24, Pl.'s Resp. Defs.' Mots. Dismiss at 2-3]. She relies on § 454.210(2)(a)(4), which, along with § (2)(a)(5) and § (2)(a)(9), permit jurisdiction even when the offending acts occur outside the Commonwealth.[3] *Newberry*, 789 F.3d at 642. She suggests that the long-arm statute applies to WCS and VCC because A.M. "continues to suffer new, unique and unexpected problems as she grows, enters puberty, [and] gains muscle mass with zero gain in mental capacity." [DE 24, Pl.'s Resp. Defs.' Mots. Dismiss at 2-3].

Under § (2)(a)(4), a tortious injury may be caused "in the Commonwealth" if "the defendant regularly engage[s] in or solicit[s] business in Kentucky." *Newberry*, 789 F.3d at 642. Cooper filed website screenshots showing that CWS maintains two refugee and immigrant offices in the Commonwealth under the name "Kentucky Refugee Ministries, Inc." [DE 24-6, Web. Screenshot at 2]. She does not dispute VCC's claim that it does not do business in Kentucky. [DE 23, Def. VCC's Mot. Dismiss]. Instead, she argues that VCC "should reasonably expect to be haled into court wherever CWS may be under the theory of *respondeat superior*." [DE 24, Pl.'s Resp. Defs.' Mots. Dismiss at 15].

The Court need not determine whether CWS's Kentucky contacts are sufficient to establish jurisdiction under § (2)(a)(4), as Cooper fails to make the threshold showing that A.M.'s injuries "arise from" CWS's (and, by extension, VCC's) Kentucky operations. *See Philmo, Inc. v. Checker Food Holding Co.*, 2016 WL 1092862, at *2 (W.D. Ky. Mar. 21, 2016) (discussing the standard for business contacts in the § (2)(a)(1) context).

---

[3] Cooper does not attempt to present specific facts showing that §§ (2)(a)(5) (breach of warranty) or (2)(a)(9) (telephone solicitation) apply to this case.

In *Caesars*, a Kentucky resident was injured in a slip-and-fall incident at Caesars Riverboat Casino in Elizabeth, Indiana. 336 S.W.3d at 53. The Casino promoted its services to Kentucky residents via in-state advertising, "charitable and civic activities in Kentucky," and "a substantial sponsorship of the Kentucky Derby Festival." *Id.* The Casino derived approximately 50% of its revenue from Kentucky residents. *Id.* Despite these ties, the Kentucky Supreme Court found "no reasonable and direct nexus between [the Casino's] marketing activities and charitable conduct in th[e] Commonwealth and the negligent acts or omissions in Indiana that produced [the Kentucky resident's] fall." *Id.* at 57-59. The plaintiff's injuries were too far attenuated from the Casino's activities in the Commonwealth to fit the definition "arising from." *Id.*

Kentucky federal courts have also considered the issue. In *John Conti Coffee Co. v. MAPCO Express, Inc.*, 2014 WL 12648449, at *1 (E.D. Ky. Jan. 2, 2014), the plaintiff argued that the court had jurisdiction over MAPCO in a trademark dispute because the company operated three Kentucky locations. The court disagreed, holding that the action still "must have originated from, or came into being, as a result" of MAPCO's Kentucky activities. *Id.* at *3 (citing *Caesars*, 336 S.W.3d at 58). Because the alleged conduct was wholly tied to Tennessee, the court lacked personal jurisdiction. *Id.* at *4.

Conversely, in *Commins v. NES Rentals Holdings, Inc.*, 2017 WL 3485005, at *1 (W.D. Ky. Aug. 14, 2017), the plaintiff brought a wrongful death action against NES for lending the plaintiff's employer a defective boom lift at its Louisville store. NES had the boom lift delivered to a work site in Ghent, Kentucky, where the accident occurred. *Id.* In finding that venue was proper, the court held that the plaintiff's claim arose from NES's Louisville operations because it performed maintenance on and leased the boom lift in Louisville. *Id.* at *4.

Here, Cooper contends that A.M.'s injuries arise from CWS's Kentucky ties because CWS operates in Kentucky and A.M. continues to suffer new injuries as she ages. [Pl.'s Resp. Defs.' Mots. Dismiss at 15-16]. This misreads the statute. While CWS maintains offices in the Commonwealth and A.M. continues to suffer *symptoms* from the event at the Maryland daycare, her *injury* in no way arises from Defendants' Kentucky ties. Cooper has acknowledged that A.M.'s injury was caused by actions in Maryland. CWS and VCC recommended the Hagerstown, Maryland daycare when Cooper and A.M. lived in Maryland, and A.M.'s disabling event occurred in the Maryland daycare. [DE 1, Compl. at ¶ 21; DE 17, Amend. Compl. at ¶ 21; DE 24, Pl.'s Resp. Defs.' Mots. Dismiss at 1]. If CWS and VCC did injure A.M., that injury is wholly tied to Maryland and does not reach the organizations' Kentucky operations. As in *Caesars* and *MAPCO*, the offending events here occurred outside of Kentucky and neither originated from nor came into being because of Defendants' presence in Kentucky.

Given this, A.M.'s injuries and CWS's and VCC's alleged bad acts are too far attenuated from the organizations' Kentucky operations to fit within the long-arm statute's definition of "arising from." Even construing all pleadings and written submissions in her favor, Cooper has not set forth specific facts showing that jurisdiction is proper and thus has not met her burden to establish personal jurisdiction. To find otherwise would eliminate the requirement that an injury "arise from" a defendant's conduct, and subject CWS and VCC to jurisdiction merely because CWS operates in the Commonwealth.

**B.     Allstate**

Cooper's claims against Allstate fail for similar reasons. She argues that the company "has subjected itself to the jurisdiction of the courts of the Commonwealth of Kentucky" by doing business in Kentucky. [DE 24, Pl.'s Resp. Defs.' Mots. Dismiss at 2, 14]. As discussed above,

8

Kentucky's long-arm statute requires more than a mere business presence in the Commonwealth. Even if Allstate's Kentucky contacts are sufficient to establish jurisdiction under § (2)(a)(4), Cooper still must set forth specific facts showing that A.M.'s injury "arises from" the company's Kentucky ties.[4]

In 2016, the Court of Appeals of Kentucky decided a similar case in which an Indiana resident brought a claim against an insurance company authorized to sell insurance and transact business in Kentucky. *Taylor v. Bristol W. Ins. Co.*, 2016 WL 675912, at *1 (Ky. Ct. App. Feb. 19, 2016), *review denied* (Aug. 17, 2016). The Court of Appeals upheld the lower court's decision dismissing the case for lack of personal jurisdiction under the Kentucky long-arm statute because the Indiana resident entered into and purchased the insurance in Indiana. *Id.* at *4.

Here, Allstate's insurance agreement with the daycare provider in no way implicates Allstate's Kentucky operations. Although Allstate transacts business and is authorized to sell insurance in Kentucky [DE 21, Def. Allstate's Mot. Dismiss at 9], that business lacks a direct nexus to the alleged wrongful acts. The property was insured in Maryland through an Allstate agent in West Virginia. [DE 17, Amend. Compl. at ¶ 17]. Cooper does not claim that the daycare provider and Allstate entered into their agreement within the Commonwealth, and there is no reason to believe that is the case. Thus, consistent with the standard established by Kentucky courts, the Sixth Circuit, and most recently refined in *Taylor*, Cooper has failed to set forth specific facts establishing jurisdiction under Kentucky's long-arm statute.

## CONCLUSION

For the reasons set forth above, and being otherwise sufficiently advised, **THE COURT HEREBY ORDERS AS FOLLOWS**:

---

[4] As with CWS and VCC, Cooper does not attempt to present specific facts showing that §§ (2)(a)(5) (breach of warranty) or (2)(a)(9) (telephone solicitation) apply to this case. *See* n. 2, *supra*.

9

(1) Defendant Church World Services' Motion to Dismiss [DE 20] is **GRANTED**.

(2) Defendant Allstate Insurance Company's Motion to Dismiss [DE 21] is **GRANTED**.

(3) Defendant Virginia Council of Churches, Inc.'s Motion to Dismiss [DE 23] is **GRANTED**.

(4) Plaintiff A.M.'s Complaint, by her parent and next friend, Oprah Cooper, Jr., f/k/a Oda Hakorimana [DE 1] is **DISMISSED** and **STRICKEN** from the Court's docket.

cc: Counsel of Record